**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS WISNIEWSKI,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:13-2642** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **JON D. FISHER, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Pending before the court are the defendants' motion to dismiss the plaintiff's amended complaint, (Doc. 16), and the report of Magistrate Judge Mehalchick recommending that the defendants' motion to dismiss be granted and the plaintiff's amended complaint be dismissed with prejudice, (Doc. 33). Based upon the court's review of the relevant documents, the court will adopt the report of Judge Mehalchick in its entirety.

By way of relevant background, the plaintiff filed the instant civil rights action pursuant to 42 U.S.C. §1983 on October 25, 2013. (Doc. 1). An amended complaint was filed by the plaintiff on December 9, 2013, in which he alleges violations of his First, Eighth and Fourteenth Amendment rights. (Doc. 12). The plaintiff names as defendants twenty-six (26) Department of Corrections, ("DOC"), employees, as well as a Nurse Practitioner, Josh Mahute, who is a contract employee with the DOC[1].

---

[1]The instant motion to dismiss is brought only on behalf of the twenty-six
(continued...)

On January 30, 2014, the defendants filed a motion to dismiss the plaintiff's amended complaint, (Doc. 23), along with a brief in support thereof, (Doc. 24). On April 10, 2014, the plaintiff filed a brief in opposition to the defendants' motion to dismiss. (Doc. 31).

On June 25, 2014, Judge Mehalchick issued a report in which she recommends that the defendants' motion to dismiss the plaintiff's amended complaint be granted. Specifically, she recommends that all but two claims be dismissed as barred by the applicable statute of limitations and that the two remaining claims be dismissed for failure to state a claim upon which relief can be granted. On September 2, 2014, the plaintiff filed objections to Judge Mehalchick's report and recommendation. (Doc. 38). The defendant's filed a responding memorandum of law on September 15, 2014. (Doc. 41).

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v.

---

¹(...continued)
DOC employees represented by the Office of General Counsel. Upon review of the docket in this case, there is no indication that defendant Mahute was ever served with the plaintiff's amended complaint. In light of the court's determination that a majority of the plaintiff's claims are barred by the applicable statute of limitations and that the remaining claims fail to state a claim upon which relief can be granted, any of the plaintiff's claims against defendant Mahute will be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), which grants the court authority to dismiss a case at any time if the court determines that the action fails to state a claim upon which relief can be granted.

Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

In his objections, the plaintiff appears to take no issue with the background and procedural history of the case set forth by Judge Mehalchick in her report. To this extent, Judge Mehalchick's report provides that, while incarcerated at the State Correctional Institution, Smithfield, ("SCI-Smithfield"), the plaintiff alleges that he was assigned by officials to provide legal services to inmates as an inmate legal reference aide in the law library.

(Doc. 12, ¶¶ 28-35). Sometime in 2007, fellow inmate William Pierce was assigned by defendant Lubert to the plaintiff's caseload. (Id. at ¶¶ 36-37).

Subsequently, the plaintiff complained to defendants Harlan, Lubert and Moolathara about problems resulting from the inmate staff shortage in the library and told them that the shortage was creating a backlog. (Id. at ¶¶ 38-39). On February 14, 2011, the plaintiff reiterated his concerns to defendant Fisher. (Id. at ¶40). The plaintiff then submitted an inmate request form on February 16, 2011, regarding his concerns about the library and requested to cut to the front of the pill line in order to assist in the library. (Id. at ¶¶ 41-42). As a result of his expressions of concern regarding the law library legal assistance program and library policies, the plaintiff alleges that defendant Harlan directed defendants Lubert and Moolathara to "strictly scrutinize all Plaintiff's activities when assisting eligible inmates assigned to his case load." (Doc. 12, ¶ 44).

On or around April 1, 2011, the plaintiff alleges that inmate Pierce asked plaintiff for assistance in preparing a grievance challenging yard exercise. (Doc. 12, ¶ 45). In return, the plaintiff asked another inmate, Roger Buehl, for advice on the grievance and inmate Buehl provided the plaintiff a rough draft text. (Id. at ¶¶ 46-47). During a strip search of the plaintiff, defendant Smith discovered the rough draft, and on April 4, 2011, when the plaintiff left his work station to report to the pill line, he alleges that defendant Moolathara took the rough draft from the plaintiff's work station. (Id. at ¶¶ 52-57). When

the plaintiff returned and could not find the rough draft, he obtained another copy from inmate Buehl on April 6, 2011. (Id. at ¶ 59). According to the plaintiff, he was called to report to the security office that same day to discuss the rough draft that was confiscated from his work station. (Id. at 64-65). The plaintiff alleges that he was informed that there were many grievances filed by other inmates which used the same language as the draft given to the plaintiff by inmate Buehl. (Id. at ¶ 72). Subsequent to this conversation, the plaintiff alleges that he was placed in administrative custody pending an investigation into the matter; (Id.); his cell was searched, (Id. at ¶ 73); and he was later told that he had to reduce the number of his stored items necessitating that he discard some of his personal property, (Id. at ¶¶ 74-75). The plaintiff alleges that, while going through his property, he discovered a number of his personal items missing. (Id. at ¶ 76).

On April 11, 2011, the plaintiff was issued a misconduct by defendant Eichenlaub charging him with engaging in or encouraging unauthorized group activity, possession or circulation of a petition, possession of contraband, and lying to an employee. (Doc. 12, ¶ 77). The plaintiff alleges that he was not allowed to present the testimony of three witnesses at his misconduct hearing and that defendant Mitchell refused to consider the plaintiff's own testimony. (Id. at ¶¶ 78, 81). The plaintiff was found guilty on all charges and received ninety days in the restricted housing unit, ("RHU"). (Id. at ¶ 82). The plaintiff filed an appeal of the hearing decision and on June 20, 2011, the matter was

remanded for a new hearing based on the fact that the rough draft was not a "petition" as the term was used in the context of the misconduct charge. (Id. at ¶¶ 87, 130-132). The plaintiff alleges that he received the response from the Chief Hearing Officer on June 27, 2011, (Id. at ¶ 148), and the misconduct was dismissed without prejudice on July 6, 2011, (Id. at ¶ 90). However, the plaintiff indicates that, in the meantime, he had spend eighty-eight days in the RHU. (Id. at 137). The plaintiff alleges that the delay in releasing him from the RHU was retaliatory and denied him due process.

While in the RHU, the plaintiff alleges that he suffered several violations. Initially, the plaintiff alleges that his leg brace was confiscated by defendant Shoope, (Doc. 12, ¶¶ 330-33), and that he was improperly assessed a medical co-pay based upon his visit to medical to have his leg brace returned and to have his medication adjusted, (Id. at ¶¶ 334-38). The plaintiff also alleges that he requested copies of misconduct documents, but was informed that the pickup and delivery schedule for items to be photocopied had been reduced from two days per week to one, which caused him to lose an opportunity to seek reconsideration and hampered his ability to prepare for his misconduct hearing and submit grievance appeals. (Id. at ¶¶ 363-64, 372, 376). Next, the plaintiff alleges that he requested to borrow copies of various Departmental Administrative Directives needed for use in relation to his misconduct proceedings, but was denied, resulting in his having to purchase his own copies in order to have them for his use. (Id. at ¶¶ 349-52). Finally,

the plaintiff alleges that he was denied the opportunity to go out for yard on five occasions and that such denial was retaliatory. (Id. at ¶¶ 168-237).

Subsequent to his release from the RHU, the plaintiff alleges that he discovered that his television was not working properly and claims that it was damaged by "RHU officers in retaliation for being suspected and adjudicated guilty on baseless/false misconduct charges levied for conspiring with Inmate Roger Buehl." (Doc. 12, ¶ 284-85, 289).

Later, the plaintiff alleges that he forwarded a request to defendant Lightner to seek reinstatement to his position as a library aide. (Doc. 12, ¶ 242). Plaintiff's request was denied, and he filed an administrative appeal challenging his termination from the library as retaliatory. The appeal was denied through final review on November 29, 2011. (Id. at ¶¶ 252-62).

In the meantime, on August 30, 2011, the plaintiff alleges that he was in the library on scheduled law clinic time when he alleges that he was instructed by defendant Harlan that, if he wished to make personal legal copies, he would have to return and use his leisure time to make the copies. (Id. at ¶¶ 301-02). The plaintiff alleges that defendant Harlan interfered with his right to make legal copies in retaliation for his conversation with defendant Fisher regarding library policies. (Id. at ¶¶ 304-07).

As set forth by Judge Mehalchick, in his amended complaint, the plaintiff alleges that he was subjected to a myriad of retaliatory acts by the defendants, including:

in April 2011, Defendants Myers and Eichenlaub misused the DOC disciplinary procedures in retaliation against Plaintiff for his exercise of free speech (Doc. 12, ¶ 100); Hearing Examiner Mitchell colluded with Myers, Eichenlaub, and Hannah to issue misconduct charges in retaliation for Plaintiff exercising his free speech (Doc. 12, ¶ 116); Plaintiff lost his institutional library job as legal reference aide on the pretext that Plaintiff was a security threat (Doc. 12, ¶¶ 238-240); Plaintiff was subjected to ten additional days in the RHU (between June 20 - June 30, 20110 (Doc. 12, ¶ 150-65); in June 2011, Defendant Barnett denied Plaintiff outside yard access in retaliation (Doc. 12, ¶¶ 187-190); Defendants damaged his television in retaliation for Plaintiff conspiring with Inmate Buehl (Doc. 12, ¶ 289); in May 2011, Defendant Rutter refused to put Attorney Jennifer Tobin on Plaintiff's approved list because Plaintiff could not provide her birth date (Doc. 12, ¶¶ 320-321); in April 2011, Defendant Shoop confiscated Plaintiff's left leg brace when Plaintiff was placed in the RHU, which subjected Plaintiff to a $5.00 medical co-pay (Doc. 12, ¶ 348); in April 2011, Plaintiff requested copies of the prison polices and his request was denied by Defendant Harlan (Doc. 12, ¶ 362); in April 2011, Defendant Harlan denied Plaintiff's use of library photocopying (Doc. 12, ¶ 370); and at some point, Plaintiff's cell was searched and he was instructed to reduce his number of stored items. (Doc. 12, ¶¶ 72-75).

(Doc. 33, pp. 4-5). Further, the plaintiff alleges a violation of his due process rights claiming that defendant Hollibaugh never sent him the initial decisions in two of his grievances. The plaintiff grieved the matter which was denied through final review on October 4, 2011. (Doc. 12, ¶¶384-85, 395-97).

Having considered the allegations set forth in the plaintiff's amended complaint, the arguments raised in the defendants' motion to dismiss, the plaintiff's response thereto, and the standard governing the defendants' motion to dismiss, Judge Mehalchick initially determined in her report that all but two of the plaintiff's claims should be dismissed as being barred by the

applicable statute of limitations.

Pursuant to §1983, state law applies when determining the appropriate statute of limitations "if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 265 (1985). For cases brought in Pennsylvania, "all §1983 claims should be characterized for statute of limitations purposes as actions to recover damages for injuries to the person." Springfield Township School District v. Knoll, 471 U.S. 288, 289 (1985). As such, Pennsylvania law requires that the plaintiff commence his action within two years of his injury. See 42 Pa. Cons. Stat. §5524(7) (establishing a two-year statute of limitations for "any . . . action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct"). See Bowen v. Ryan, 2006 WL 3437287 (M.D. Pa. Nov. 29, 2006) aff'd, 248 Fed. App'x 302 (3d Cir. 2007). Pennsylvania courts have ruled that the statute of limitations begins to run in cases where an injury is ongoing "when the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's misconduct." Id. (citing Cathcart v. Keene Indus. Insulation, 471 A.2d 493, 500 (Pa.Super.Ct.1984)).

In this case, the plaintiff alleged in his complaint and argued in his brief in opposition to the defendants' motion to dismiss, as well as in his objections to Judge Mehalchick's report, that the continuing violation doctrine applies in his case so as to toll the applicable statute of limitations.

The "continuing violations doctrine" constitutes an "equitable exception to the timely filing requirement." West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Courts in the Third Circuit consider the continuing violations doctrine to be a narrow exception that is "often invoked but infrequently applied." Swift v. McKeesport Housing Authority, 726 F.Supp.2d 559, 568 (W.D.Pa. 2010). Under this doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991). Pursuant to the continuing violations doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts," West, 45 F.3d at 755, and the doctrine "does not apply when plaintiffs are aware of the injury at the time it occurred." Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 417 n. 6 (3d Cir. 2003).

In order to assess whether the conduct is more than the occurrence of isolated or sporadic acts, the Third Circuit has directed that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the

act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. Of the three, the controlling consideration is whether the alleged act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his rights. West, 45 F.3d at 755. See also Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir.2001).

Here, Judge Mehalchick found that, while the plaintiff alleges that defendants' adverse actions against him were part of an ongoing pattern of retaliatory conduct and that claims based on these alleged adverse acts should be considered timely because the most recent one fell within the applicable statute of limitations, each of the alleged retaliatory acts was sufficiently adverse to plaintiff's interest and the consequences of each act were sufficiently permanent as to put a reasonable person on notice that these acts could support a viable claim for retaliation. (Doc. 33, p. 10) (citing Arneault v. O'Toole, 864 F.Supp.2d 361, 392 (W.D.Pa. 2012), *aff'd on other grounds*, 513 Fed. App'x. 195 (3d Cir. 2013)). The court agrees with the reasoning and determination of Judge Mehalchick and will adopt her recommendation in this respect. To this extent, the court finds that, even if the plaintiff's allegations are sufficient to meet the requirements of the first two factors in assessing whether the defendants' conduct was more than the occurrence of isolated or sporadic acts, the alleged conduct of each of the

individual defendants complained of by the plaintiff consisted of discreet and actionable injuries of which the plaintiff should have been aware at the time they occurred. Thus, the court finds that the continuing violations doctrine does not apply in this case so as to toll the applicable statute of limitations and will adopt Judge Mehalchick's report in this respect[2]. With this finding, all but two of the plaintiff's claims are barred by the applicable statute of limitations: (1) plaintiff's claim that he was retaliated against when he was not permitted to make personal legal photocopies during law clinic time; and (2) he was retaliated against when he was removed from his position as a legal reference aide.

---

[2]The court notes that, in one paragraph of his objections, the plaintiff argues that the magistrate judge failed to consider whether it would be appropriate to toll the statute of limitations during the time he was exhausting his administrative remedies pursuant to the Prison Litigation Reform Act, ("PLRA"). He does not ultimately seek relief on this basis, however. Upon review, the plaintiff did not raise the issue of equitable tolling on this basis either in his complaint or in response to the defendants' motion to dismiss. Generally, where issues or arguments are raised for the first time in objections to a magistrate judge's report, they are waived. See, e.g., Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); Jimenez v. Barnhart, 46 Fed.App'x 684, 684 (3d Cir. 2002) ("because Appellant raised the argument that she is entitled to a closed period of disability for the first time in her objections to the Magistrate Judge's Report and Recommendations, and not in her opening brief, we deem this argument waived."); Heston v. Commissioner of Social Sec., 245 F.3d 528, 535 (6th Cir. 2001) ("parties may not raise new arguments or issues at the district court stage that were not presented to the Magistrate Judge."). As the plaintiff failed to raise the issue of equitable tolling during the time he was exhausting administrative remedies prior to filing his objections and does not ultimately seek relief in his objections on this basis, the court will not consider the argument herein.

As for the claims which are not time barred, in the first claim, the plaintiff alleges that he was retaliated against for exercising his First Amendment rights when he was not permitted to make personal legal photocopies while in the law library during law clinic. Specifically, the plaintiff alleges that defendant Harland "interfered with Plaintiff's ability to obtain legal copies while already in library on scheduled law clinic . . . Defendant Harlan instructed Plaintiff that if he wished to make legal copies, he must first leave from his scheduled law clinic returning to his housing unit, only to later return utilizing leisure library for making legal copies." (Doc. 12, ¶¶ 301-02). The plaintiff alleges that there is no policy in place which requires this and that defendant Harlan's actions were in retaliation for the plaintiff's exercise of his First Amendment rights. (Id. at ¶¶ 303-12).

In order for the plaintiff to state a First Amendment retaliation claim, he must show that (1) he engaged in constitutionally protected conduct, (2) prison officials took adverse action against him sufficient to "deter a person of ordinary firmness from exercising his constitutional rights," Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); and (3) "the constitutionally protected conduct was a 'substantial or motivating factor' in the decision to discipline" the inmate. Rauser v. Horn, 241 F.3d 330, 333–334 (3d Cir. 2001) (quoting Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)); see also Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002) (noting that the third factor requires the demonstration

of a "causal link between constitutionally protected action and the adverse action taken against him").

In considering this claim, Judge Mehalchick found that the plaintiff met the first element for establishing a retaliation claim in so far as he alleged that he had engaged in protected activity when, while working as a legal reference aide in the law library, he spoke with defendant Fisher and filed a subsequent inmate request about his concerns that staff shortages were interfering with his ability to assist inmates on their case loads.

Judge Mehalchick found, however, that the plaintiff did not satisfy the second element to show that he had suffered some adverse action at the hands of prison officials which would have been sufficient to deter a person on ordinary firmness from exercising his constitutional rights. Here, Judge Mehalchick found that the plaintiff's claim that he was restricted him from photocopying personal legal materials during law clinic and was directed to return during leisure library time was a *de minimus* act insufficient to state a retaliation claim under §1983. This court agrees.

The plaintiff does not allege that he was denied entirely of the right to make his personal legal photocopies. Instead, he was informed only that he was not permitted to make his personal photocopies while on law clinic time and that he would have to return later that day during leisure time to make his personal copies. This court agrees that, at most, the plaintiff was inconvenienced when he had to return on his own time to make his own

personal legal photocopies. The court finds that the act of making the plaintiff return to the library on his own time to make photocopies was *de minimus*, at best, and would not deter a person of ordinary firmness from exercising his constitutional rights. Because the plaintiff has failed to establish the second prong of a retaliation claim, the court need not consider the final causation prong.

In light of the above, the court will adopt the report of Judge Mehalchick recommending that the plaintiff's First Amendment retaliation claim regarding the photocopy incident be dismissed for the plaintiff's failure to state a claim upon which relief can be granted.

The plaintiff's final claim is that he was removed from his prison employment position as a legal reference aide in retaliation for exercising protected speech. Specifically, the plaintiff alleges that he was removed from his job because he exercised his First Amendment right to assist inmates and prepare suitable documents for submission to the courts and administrative remedies. (Doc. 12, ¶ 275). The plaintiff alleges that he received a retaliatory misconduct as a result of assisting other inmates with their legal matters and this ultimately led to his removal from the position as a legal reference aide. (Id. at ¶¶ 276-77).

In considering the plaintiff's claim, Judge Mehalchick determined that the plaintiff failed to allege that he had engaged in constitutionally protected activity sufficient to satisfy the first prong of the retaliation claim. (Doc. 33, p.

18) (citing Rauser, 241 F.3d at 333). The plaintiff takes issue with this finding in his objections citing to the Supreme Court's decision in Shaw v. Murphy, 532 U.S. 223 (2001). This court has had a previous occasion to consider an argument similar to that raised by the plaintiff in this case in the context of the Shaw decision. Ultimately, relying on Shaw, the undersigned found, as did Judge Mehalchick, that inmates do not possess an independent First Amendment right to provide legal assistance to fellow inmates, and as such, the plaintiff could not establish that he engaged in constitutionally protected conduct. Miller v. Lawler, 2012 WL 629280 (M.D. Pa. Feb. 3, 2012) (citing Walker v. Campbell, 2011 U.S. Dist. LEXIS 142673, at *13-14, 2011 WL 6153104 (W.D.Pa. Oct. 31, 2011)), *report and recommendation adopted*, 2012 WL 638796 (M.D. Pa. Feb. 27, 2012), *order vacated on reconsideration*, 2012 WL 1340346 (M.D. Pa. Apr. 18, 2012), *and report and recommendation adopted*, 2012 WL 4103919 (M.D. Pa. Sept. 18, 2012). The court finds no reason to revisit its findings in Miller and, therefore, will adopt the report of Judge Mehalchick finding that the plaintiff has failed to state a claim for retaliation with respect to his claim that he was improperly removed from his prison employment.

On the basis of the foregoing, an appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  September 29, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2642-01.wpd